IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK OTTOVICH, HARVEY OTTOVICH, individuals,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF FREMONT: CITY OF FREMONT POLICE OFFICERS, RICARDO CORTES AS DOE 1, SARGEANT HEININGE AS DOE 2, OFFICER SETTLE AS DOE 3, OFFICER DANG AS DOE 4, Farmer as doe 5, VETERANS ADMINISTRATION PALO ALTO HEALTH CARE SYSTEM AS DOE 6, VETERANS ADMINISTRATION PALO CARE SYSTEM EMPLOYEE JOANIE DROBRICK PATIENT ADVOCATE as Doe 7, DOES 8 THROUGH 25,<br><br>　　　　Defendants.<br>_____/ | No. CV-09-04181 MMC<br><br>**ORDER GRANTING DEFENDANT CITY OF FREMONT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

　　　　Before the Court is defendant City of Fremont's ("Fremont") Motion to Dismiss plaintiffs' Third Amended Complaint ("TAC"), filed April 27, 2010, by which Fremont seeks, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal of plaintiffs' First through Fourth Causes of Action.[1] Plaintiffs Mark Ottovich and Harvey Ottovich have

---

[1] Plaintiffs' Fifth Cause of Action is alleged only against defendant Veterans Administration. (See TAC ¶¶ 70-72.)

filed opposition,[2] to which Fremont has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for determination on the parties' written submissions, hereby VACATES the June 4, 2010 hearing, and rules as follows.

**BACKGROUND**

On April 13, 2010 plaintiffs' filed their TAC, in which plaintiffs allege, as against Fremont, two Causes of Action under 42 U.S.C. § 1983:[3] (1) "Deprivation of Civil Rights as a Result of Official Custom or Policy" (Third Cause of Action), and (2) "Deprivation of Civil Rights as a Result of All Entity [sic], In their Official Capacity, Defendants' Failure to Train Their Officers" (Fourth Cause of Action).

In support of said claims, plaintiffs allege the following: On or about November 14, 2006, police officers employed by Fremont forcibly entered Mark Ottovich's office, without a warrant, in search of Harvey Ottovich, Mark's brother.  (TAC ¶¶ 13, 22-24.)  At such time, Harvey was not present at Mark's office (id. ¶ 24), and Mark was arrested under the "pretext" that said officers believed Mark to be Harvey (id. ¶ 33).  The officers were on notice that Mark was not Harvey by reason of, inter alia, repeated statements by an employee at the scene that Harvey was not present (id. ¶¶ 25), identifications of Mark by two other individuals who worked and/or lived in the building (id. ¶ 25, 34), Mark's arrest in an office having a door bearing his name and while he was carrying identification in his name (id. ¶ 33), and the officers' receipt of a description of Mark from the police dispatcher (id. ¶ 34).  No charges were filed against Mark arising from the above-described events.

---

[2] Although the First through Fourth Causes of Action are alleged to be brought on behalf of "plaintiffs," plaintiffs have indicated in a prior filing that said causes of action are brought only on behalf of Mark Ottovich. (See Pls.' Opp'n (Docket No. 33) at 1:25-2:2, 6:3-6.)  Consequently, all claims to which the instant motion is addressed are brought solely on behalf of Mark Ottovich.

[3] By the Court's order of March 16, 2010, plaintiffs' First and Second Causes of Action, to the extent they were alleged against Fremont, were dismissed without leave to amend.  (See Mar. 16 Order at 7:16-17.)  Although plaintiffs' TAC realleges such claims against Fremont, plaintiffs, in their opposition to the instant motion, make clear they have withdrawn those claims.  (See Pls.' Opp'n at 4:14-5:5.)

(Id. ¶ 31.)

Plaintiffs further allege that Mark Ottovich "is informed and believes" that the named Fremont police officers, for "approximately 34 years," have engaged in an "ongoing pattern and practice of harassment and arresting" Mark Ottovich (id. ¶¶ 13, 14), as evidenced by the following: "[o]n several occasions he [was] arrested but no charges were filed against him, or the complaint filed by the district attorney was dismissed" (id. ¶ 14), he "has been pulled to the side of the road" and "giv[en] a sobriety test . . . when he does not drink" (id. ¶ 14), and, in 2008, he was arrested for "dumping garbage in a dumpster when in fact he was . . . authorized" to do so (id. ¶ 15). Plaintiffs' allege that Fremont's "training program was not adequate to train its officers to properly handle usual and recurring situations" (id. ¶ 64), that Fremont was "deliberately indifferent to the need to train its officers adequately" (id. ¶ 65), and that the above-described conduct on the part of the named Fremont police officers "occurred as a result of official policy or custom of the City of Fremont" (id. ¶ 58).

All of the above-referenced allegations were contained in plaintiffs' Second Amended Complaint ("SAC").  In the TAC, plaintiffs additionally allege, on "information and belief," that Fremont police officers make "arrest[s] without probable cause, search without probable cause," and "incarcer[ate]" individuals who are "never charged with a crime" (id. ¶ 61) and that such conduct is "routinely practiced and committed on an ongoing basis by . . . Fremont police officers . . . only for the purpose of harassment of individuals and for no legitimate law enforcement purpose, . . . [and] occurs as either official policy or custom of the City of Fremont . . . ." (id. ¶ 61).  Similarly, plaintiffs' allege, "[t]he City of Fremont's official policy and/or custom of deliberate indifference toward its citizens . . . has resulted in its officers['] . . . failure to observe the distinctions between reasonable suspicion to detain and probable cause to arrest."  (Id. ¶ 62.)

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 129 S. Ct. at 1950 (internal quotation and citation omitted).

**DISCUSSION**

**A.  Third Cause of Action: Deprivation of Civil Rights as a Result of Official Custom or Policy**

In the Third Cause of Action, plaintiffs, as noted, again allege the above-described conduct on the part of the named Fremont police officers was the "result of official policy or custom of the City of Fremont." (TAC ¶ 58). Fremont moves to dismiss the Third Cause of Action on the ground that plaintiffs' claim is "unsupported by factual allegations and insufficient to withstand dismissal under Iqbal." (See Mot. at 8:23-24.)

Municipalities and other local governments are deemed "persons" under § 1983 and are subject to liability thereunder where an alleged constitutional violation is the result of official policy or custom. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). A plaintiff may demonstrate municipal liability, based on policy or custom,

4

in one of three ways.  First, a plaintiff "may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity."  See Gillette v. Delmore, 979 F. 2d 1342, 1346 (9th Cir. 1992) (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)) (internal quotation omitted).  Second, a plaintiff may "establish that the individual who committed the constitutional tort was an official with 'final policy-making authority' and that the challenged action itself thus constituted an act of official governmental policy."  See Gillette, 979 F.2d at 1346.  Third, a plaintiff "may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."  Id. at 1346-47.  A municipality may not, however, be held vicariously liable for the unconstitutional acts of its employees under a theory of respondeat superior.  See Monell, 436 U.S. at 691; see also Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

As noted, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to state a claim to relief that is plausible on its face."  See Iqbal, 129 S. Ct. at 1949 (internal quotation and citation omitted).  Here, plaintiffs have not offered any new factual allegations in support of their claims against Fremont that were not alleged in their Second Amended Complaint.  As noted in the Court's prior order, such allegations are insufficient to support a plausible claim that the alleged constitutional violations were the result of either a "formal governmental policy or a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity."  See Gillette, 979 F.2d at 1346 (internal quotation and citation omitted).  Nor, as noted in the Court's prior order, are plaintiffs' conclusory allegations with respect to official policy or custom sufficient to remedy such deficiency. (See TAC ¶¶ 61, 62); see also Iqbal, 129 S. Ct. at 1950 (holding "conclusions couched as factual allegations" insufficient

to support claim).[4]

Accordingly, the Third Cause of Action will be dismissed.

**B.  Fourth Cause of Action: Deprivation of Civil Rights as a Result of Defendant's Failure to Train its Officers**

In the Fourth Cause of Action, plaintiffs again allege that Mark Ottovich suffered the above-described injuries because Fremont's "training program was not adequate to train its officers to properly handle usual and recurring situations" (TAC ¶ 64), and Fremont was "deliberately indifferent to the need to train its officers adequately" (id. ¶ 65).

"[T]he inadequacy of a police training program may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." See City of Canton v. Harris, 489 U.S. 378, 388 (1989). "That a particular officer may be unsatisfactorily trained," however, "will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." See id. at 390-91. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . does the failure to train constitute a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." See Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010) (internal quotations and citations omitted). "[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." See City of Canton, 489 U.S. at 391.

Here, the TAC fails to identify any deficiency in Fremont's training program, let alone how any such deficiency reflects a deliberate or conscious choice by Fremont or resulted in the alleged injury to Mark Ottovich. Rather, plaintiffs' allegations are wholly conclusory, and, consequently, insufficient to support plaintiffs' claim. See Iqbal, 129 S. Ct. at 1950 (holding courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

---

[4] Plaintiffs' reliance on Leatherman v. Tarrant County, 507 U.S. 163 (1993), and Karim Penahi v. Los Angeles Police Dept., 839 F.2d 621 (9th Cir. 1988), is unavailing as those cases predate Twombly and Iqbal.

Accordingly, to the extent the claim therein is alleged against Fremont, the Fourth Cause of Action will be dismissed.

**C.     Leave to Amend**

The above-discussed deficiencies were called to plaintiffs' attention in the Court's prior order dismissing the Third and Fourth Causes of Action, and plaintiffs have neither remedied said deficiencies nor suggested how further leave to amend would assist them in doing so.  Rather, plaintiffs assert that a "bare allegation" of policy, custom, or practice suffices to plead plaintiffs' claims.  (See Pls.' Opp'n at 8:28.)

Accordingly, no further leave to amend the Third and Fourth Causes of Action will be granted.

## CONCLUSION

For the reasons stated above, Fremont's Motion to Dismiss is hereby GRANTED and plaintiffs' Third and Fourth Causes of Action as alleged against Fremont are hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: May 28, 2010

MAXINE M. CHESNEY
United States District Judge